IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J&J SPORTS PRODUCTIONS, INC.                 :

                                             :

    v.                                       :   Civil Action No. DKC 14-1713

                                             :

SAMLINA, INC.                                :

                                             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case involving alleged violations of the Communications Act of 1934 is a motion for default judgment filed by Plaintiff J & J Sports Productions, Inc. (ECF No. 9).  The court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the reasons that follow, Plaintiff's motion will be granted in part and denied in part.

**I.  Background**

On May 28, 2014, Plaintiff J & J Sports Productions, Inc. commenced this action against Defendant Samlina, Inc. t/a Samlina Restaurant alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 (unauthorized reception of cable services) and 605 (unauthorized publication or use of communications), and the common law tort of conversion. (ECF No. 1).  The complaint recites that Plaintiff "paid for and was thereafter granted the exclusive nationwide television

distribution rights to the *Floyd Mayweather, Jr. v. Miguel Cotto, WBA World Light Middleweight Championship Fight Program*[,] which telecast nationwide on Sunday May 5, 2012, ["the Broadcast"] (this included all under-card bouts and fight commentary encompassed in the television broadcast of the event)." (ECF No. 1 ¶ 8). Plaintiff then entered into sublicensing agreements with commercial establishments, such as bars and restaurants, which purchased the rights to exhibit the Program for their patrons. (*Id.* ¶ 9). Plaintiff alleges that, "[w]ith full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so, . . . [Defendant] did unlawfully publish, divulge and exhibit the Program . . . willfully and for the purposes of direct or indirect commercial advantage or private financial gain." (*Id.* ¶ 11).

Service of process was effected on Defendant on June 9, 2014. (ECF No. 5). When Defendant failed to respond within the requisite time period, Plaintiff moved for entry of default. (ECF No. 6). The clerk entered default on September 17, 2014 (ECF No. 8). Plaintiff filed the pending motion for default judgment that same day. (ECF No. 9). To date, Defendant has taken no action in the case.

## II.  Standard of Review

Under Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (*citing United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (*citing Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount.

"[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc*., 204 F.3d 124, 132 (4th Cir. 2000). While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (*citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

## III. Analysis

Plaintiff seeks to enforce both "sections 605 and 553 of 47 U.S.C., which are provisions of the Federal Cable Act that address different modalities of so-called 'cable theft.'" *J & J Sports Prods., Inc. v. Mayreal II, LLC*, 849 F.Supp.2d 586, 588 (D.Md. 2012). Section 553 prohibits the unauthorized interception or receipt of certain cable communications, while section 605 proscribes the unauthorized interception or receipt of certain "radio" communications, including at least "digital satellite television transmission," *Mayreal II*, 849 F.Supp.2d at 588 n.3. In its complaint, J & J does not specify how Defendant intercepted the program, but that omission is not fatal. "The complaint need not specify the precise method of interception, as pleading in the alternative is permitted." *Joe*

4

*Hand Promotions, Inc. v. Md. Food & Entm't, LLC*, Civ. No. CCB-11-3272, 2012 WL 5879127, at *4 (D.Md. Nov. 19, 2012). Instead, Plaintiff need only allege, as it does here, that a business entity "intercepted and displayed the Program at its establishment, without authorization from [J & J], on a particular date and at a particular time." *Id.* Taking those factual allegations as true, J & J has established a violation of either § 553 or § 605.

In the complaint, Plaintiff seeks statutory damages of $100,000 related to the violation of § 605, $50,000 for the violation of § 553, and unspecified compensatory damages for the alleged conversion. (ECF No. 1). In the motion for default judgment, Plaintiff seeks the same amount of damages under §§ 605 and 553, plus $1,500 in compensatory damages on the conversion count. (ECF No. 9, at 2). As explained in numerous prior opinions from judges in this district, however, "[g]enerally [] plaintiffs cannot recover under both [§§ 605 and 553] for the same conduct and courts allow for recovery under § 605 as it provides for the greater recovery." *J & J Sports Prods., Inc. v. Quattrocche*, Civ. Action No. WMN-09-CV-3420, 2010 WL 2302353, at *1 (D.Md. June 7, 2010) (*citing J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F.Supp.2d 469 (E.D.N.Y. 2009)). "Courts have similarly not allowed recovery for claims of conversion, as [such recovery] would not exceed

[that] under §§ 553 or 605 and would result in double-recovery." *J & J Sports Prods., Inc. v. Castro Corp.*, Civ. Action No. 11-cv-00188-AW, 2011 WL 5244440, at *3 (D.Md. Nov. 1, 2011) (*citing J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, No. 2:09-03141, 2010 WL 1838432, at *2 (D.S.C. 2010)). Moreover, Judge Blake's recent analysis on the conversion claim in a nearly identical case brought by J & J applies here:

> Even were it otherwise, J & J's conversion claim would fail for the alternative reason that its initial complaint does not state sufficient facts to sustain judgments even when those facts are admitted to be true. Historically, the common law tort of conversion protected only tangible property. *See UBS Fin. Servs. Inc. v.* Thompson, 217 Md.App. 500 (2014). Although Maryland courts later recognized conversion of "intangible property rights that are merged or incorporated into a transferable document," they "refuse . . . to extend the tort further, to cover situations in which the relevant document itself has not been transferred." *Id.* (*quoting Allied Inv. Corp. v. Jasen*, 354 Md. 547 (1999). Even if intangible property such as a television program transmitted via satellite or cable could be converted under Maryland law, J & J's complaint contains no allegation that tangible documents evidencing its property interest in the program were transferred to Rumors. *See Joe Hand Promotions[, Inc. v. Bougie, Inc*., Civ. No. 109-00590, 2010 WL 1790973, at *4 (E.D.Va. April 12, 2010)]. Rumors could not, by its default, admit facts never alleged in the complaint, which leaves an inadequate basis for judgment on the conversion claim.

*J & J Sports Prods., Inc. v. Rumors Inc.*, Civ. No. CCB-14-2046, 2014 WL 6675646, at *2 (D.Md. Nov. 21, 2014).

### A.   Statutory Damages

Plaintiff may recover, at most, $110,000, consisting of $10,000 in statutory damages, the maximum allowable under § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages, the maximum amount under § 605(e)(3)(C)(ii).

In *Quattrocche*, 2010 WL 2302353, at *2, Judge Nickerson set forth the relevant considerations in the damages analysis under § 605(e)(3)(C)(i)(II):

> Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising [] discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civ. No. 109-00590, 2010 WL 1790973, at *5 (E.D.Va. April 12, 2010) (patrons present); [*Kingvision Pay-Per-View, Ltd. v.*] *Admiral's Anchor*, 172 F.Supp.2d [810,] 812 [S.D.W.Va. 2001] (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.*, 232 F.Supp.2d 679, 681 (S.D.W.Va. 2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the

plaintiff's lost earnings assuming each
patron would have ordered the event for
residential viewing. [*J & J Sports Prods.,
Inc. v.*] *291 Bar & Lounge*, 648 F.Supp.2d
[469,] 474 [E.D.N.Y. 2009]. The second
variation seeks to award the license fee the
defendant would have paid if it had legally
purchased the event for exhibition. *Id.*
The other approach to calculating damages is
to award a flat sum per violation. [*J & J
Sports Prods., Inc. v.*] *J.R.'Z Neighborhood
Sports Grille*, 2010 WL 1838432, at *1
[D.S.C. Apr. 5, 2010] ($5000); [*Joe Hand
Promotions, Inc. v.*] *Angry Ales*, 2007 WL
3226451, at *5 [W.D.N.C. Oct. 29, 2007]
($1000); *Kingvision Pay-Per-View Ltd. v.
Gadson*, Civ. No. 1:04-678, 2007 WL 2746780,
at * 2 (M.D.N.C. Sept. 18, 2007) ($10,000);
*Las Reynas Restaurant*, 2007 WL 2700008, at
*3 ($2000).

In support of its claim for statutory damages in this case,
Plaintiff attaches the affidavit of Jauquine Tantillo, a private
investigator who observed the Broadcast on four (4) televisions[1]
inside Samlina Restaurant in Riverdale, Maryland, on May 6, 2012
at approximately 12:07 a.m.  (ECF No. 9-3).  The investigator
paid no cover charge to enter the restaurant, remained inside
for approximately twenty-seven (27) minutes, and counted between
175 and 198 other patrons at various times.  (*Id.*).  In its
boilerplate memorandum, Plaintiff cites a number of factors
courts have considered in determining an appropriate award of
statutory damages, but offers no explanation as to how those

---

[1] Ms. Tantillo states in her affidavit that she observed
five televisions in the establishment.  However, she states that
the Flat Screen TV over the DJ booth had nothing on it but a
screen saver from a computer.  (ECF No. 9-3, at 1).

factors should be applied in this case, and conflates the analysis for calculating statutory damages with the enhanced damages award. There is no indication that Defendant has engaged in similar conduct in the past, rendering the flat-sum approach inapplicable. Plaintiff also does not offer any evidence as to the price each of Defendant's patrons might have paid had they purchased the program on their own. If Defendant had purchased a license, however, it would have paid $4,200 to exhibit the match to the 175 to 198 individuals observed at the establishment by the investigator. (*See* ECF No. 9-4, rate card). Thus, Plaintiff appears to accept this figure as the amount that it was out-of-pocket due to Defendant's violation. Accordingly, Plaintiff will be awarded statutory damages under § 605(e)(3)(C)(i)(II) in the amount of $4,200.

**B. Enhanced Damages**

Plaintiff next demands enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), which authorizes "the court in its discretion . . . [to] increase the award of damages . . . by an amount of not more than $100,000 for each violation" of the provision. "In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gain; 4) advertising the broadcast; and 5) charging an admission fee or

charging premiums for food and drinks." *J & J Sports Prods., Inc. v. Royster*, Civ. No. RWT-11-1597, 2014 WL 992779, at *4 (D.Md. Mar. 13, 2014) (*quoting Quattrocche*, 2010 WL 2302353, at *2)).

Here, the fact that Defendant intercepted and exhibited the Broadcast willfully and for direct or indirect commercial advantage cannot be doubted. "After all, '[s]ignals do not descramble spontaneously, nor do televisions sets connect themselves to cable distribution systems.'" *J & J Sports Prods., Inc. v. Castro Corp.*, Civ. No. 11-188, 2011 WL 5244440, at *4 (D.Md. Nov. 1, 2011) (alteration in original) (*quoting Time Warner Cable v. Googuies Luncheonette, Inc.*, 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999)). On the other hand, Defendant did not charge a cover fee, and there is no indication that Defendant engaged in such conduct before or since the incident or that it advertised the Broadcast.

"Where there are no allegations of repeat behavior or otherwise *egregious* willfulness warranting harsh punitive damages, courts in this Circuit have varied in awarding enhanced damages from no enhanced damages to up to five times the statutory damage amount." *Quattroche*, 2010 WL 2302353, at *3 (emphasis added). Judge Blake's recent analysis regarding enhanced damages applies here:

> J & J has been on notice, at least since *Quattroche* – which merely codified past judicial practice – that in a case of non-egregious willfulness it was not eligible to recover the maximum damages authorized by statute and that it could not recover damages under section 553, section 605, and conversion for the same conduct.  Undaunted, J & J "has repeatedly filed motions seeking excessive damages in nearly identical cases, and the court has consistently addressed the limitations on damages for the same causes of action brought here."  *J & J Sports Prods., Inc. v. Sabor Latino Rest., Inc.*, Civ. No. PJM-13-3515, 2014 WL 2964477, at *2 (D.Md. June 27, 2014).  *In light of this recalcitrance, the court declines to award any enhanced damages.*

*Rumors*, 2014 WL 6675646, at *4 (emphasis added); *see also Sabor Latino Restaurant*, 2014 WL 2964477, at *2 ("It is troubling that J & J Sports Productions continues to proceed without regard to the many opinions written on this issue.").  Accordingly, no enhanced damages will be awarded.

## III. Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment will be granted in part and denied in part.  Judgment will be entered for Plaintiff in the amount of $4,200.  A separate order will follow.

```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```